# STATE OF MICHIGAN

# COURT OF APPEALS

KAREN MARIE KRAKE,

Plaintiff-Appellant,

v

AUTO CLUB INSURANCE ASSOCIATION,

Defendant-Appellee.

UNPUBLISHED
February 22, 2018

No. 333541
Wayne Circuit Court
LC No. 13-013566-NF

Before: RIORDAN, P.J., and BOONSTRA and GADOLA, JJ.

PER CURIAM.

In this case involving a claim for first-party personal injury protection (PIP) benefits under the no-fault act, MCL 500.3101 *et seq.*, plaintiff appeals by right the order of the trial court reinstating her case, setting aside its May 5, 2016 order, enforcing the terms of a facilitation agreement she had reached with defendant, and dismissing the case. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Plaintiff claimed that she was injured in an automobile accident that occurred on July 7, 2010. Plaintiff filed suit on October 17, 2013, alleging that defendant, her no-fault insurer, had unreasonably refused to pay PIP benefits. After her original attorney withdrew from the case, plaintiff retained Michael Canner as her attorney. Plaintiff and defendant, who was represented by Elaine Harding, ultimately agreed to participate in facilitation. After a lengthy facilitation, a "Facilitation Agreement" was signed by Canner, Harding, and plaintiff. Under this agreement, defendant agreed to pay plaintiff $20,000 to settle the suit.

After plaintiff refused to sign a release that defendant subsequently prepared, defendant did not disburse the funds as required under the facilitation agreement. Canner filed a motion to enforce the facilitation agreement and to authorize Canner to sign relevant documents needed to complete the settlement of the case. Plaintiff asserted at the November 2015 hearing on Canner's motion that she had believed that the facilitation agreement was not a final agreement, that she had not been informed that she had to sign a release, and that Canner had not answered her questions concerning the release. The trial court denied Canner's motion and directed plaintiff and Canner to discuss the matter further to see if their differences, and ultimately the lawsuit, could be resolved. If the suit could not be resolved, the trial court indicated that it would permit Canner to withdraw as counsel, and would set the matter for trial.

-1-

No order was entered following this motion hearing. The next entry in the register of actions indicates that the case was administratively closed on February 22, 2016 because of a "Lack of Order Entry." Notwithstanding the administrative closure, Canner filed a motion to withdraw in March 2016. Defendant responded to this motion and moved the trial court for reconsideration of Canner's November 2015 motion. Canner then filed a motion to reinstate plaintiff's case, and also filed a notice and proposed order in accordance with the trial court's oral ruling at the November 2015 hearing (i.e., denying defendant's earlier motion to enforce the facilitation agreement). The trial court entered the proposed order (and thus formally denied defendant's motion to enforce facilitation agreement) on May 5, 2016, even though it had not yet ruled on plaintiff's motion to reinstate the case or on defendant's motion for reconsideration.

The trial court held a hearing on the outstanding motions on May 27, 2016. Plaintiff testified regarding the circumstances of the settlement. She agreed that she was present at the facilitation. She initially denied that she had signed the facilitation agreement. However, she eventually admitted that she did "pen" her signature on the agreement. She explained, however, that she had signed, at least in her mind, only "fake initials," and that she had done so because Canner had told her the agreement was not a legally binding document. Plaintiff explained that she did not believe the document to be a final resolution of her case. She also explained that she believed the amount of the settlement was far too low, and that her case was worth $300,000.

After hearing additional testimony from plaintiff, the trial court found that plaintiff was not credible, at least to the extent she claimed not to have understood the facilitation agreement to be a legally binding document. The trial court granted defendant's motion for reconsideration and ordered that the facilitation agreement be enforced as described. This appeal followed, with plaintiff proceeding *in propria persona*. This Court granted plaintiff's motion to file a supplemental brief.

## II. ENFORCEMENT OF FACILITATION AGREEMENT

It is extremely difficult for this Court to parse plaintiff's legal arguments. In her main brief, plaintiff raises a host of issues, but none address the ultimate question decided by the trial court, which was whether plaintiff had agreed to settle this suit. "When an appellant fails to dispute the basis of the trial court's ruling, this Court need not even consider granting plaintiff[] the relief [she] seek[s]." *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 381; 689 NW2d 145 (2004) (quotation marks, brackets, ellipses, and citation omitted). Further, none of the issues that plaintiff appears to raise on appeal were raised in the trial court. "This Court need not address an issue that is raised for the first time on appeal because it is not properly preserved for appellate review." *Dep't of Environmental Qual v Morley*, 314 Mich App 306, 318; 885 NW2d 892 (2015). However, in her supplemental brief, plaintiff does challenge the trial court's enforcement of the facilitation agreement. And in her main brief, we interpret plaintiff's request for relief in the form of "[r]einstatement of Karen Krake's claim, all medical benefits and PIP benefits" as well as the section of her supplemental brief requesting that we reverse the trial court's holding that the facilitation agreement was enforceable and its dismissal of her case. We hold the trial court did not err in either respect.

The trial court enforced the facilitation agreement under MCR 2.507(G). We review de novo a trial court's interpretation of court rules. *Mich Mut Ins Co v Indiana Ins Co*, 247 Mich

App 480, 483; 637 NW2d 232 (2001). Further, the question of whether a contract exists is a question of law that we review de novo. *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006). We review for clear error a trial court's factual findings. MCR 2.613(C); see also *City of Grand Rapids v Green*, 187 Mich App 131, 136; 466 NW2d 388 (1991).

We review for an abuse of discretion a trial court's decision to grant reconsideration. *In re Estate of Moukalled*, 269 Mich App 708, 713; 714 NW2d 400 (2006). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the principled range of outcomes." *Nat Waterworks, Inc v Int Fidelity & Surety, Ltd*, 275 Mich App 256, 258; 739 NW2d 121 (2007).

An agreement to settle a pending lawsuit is a contract, and it must therefore meet all the legal requirements for contract formation, including offer, acceptance, and mutual assent or a meeting of the minds on all essential terms. *Kloain*, 273 Mich App at 452. "A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Id*. at 454 (quotation marks and citation omitted).

Further, MCR 2.507(G) governs agreements to settle a case, and provides:

An agreement or consent between the parties or their attorneys respecting the proceedings in an action, subsequently denied by either party, is not binding unless it was made in open court, or unless evidence of the agreement is in writing, subscribed by the party against whom the agreement is offered or by that party's attorney. [MCR 2.507(G).]

Ultimately, this is not a difficult case. Plaintiff, a college-educated woman, signed the facilitation agreement agreeing to settle her case for $20,000; she admitted to subscribing her initials to the agreement. Plaintiff's counsel also signed the agreement (as did defendant's counsel). The requirements of MCR 2.507(G), were therefore independently satisfied both by plaintiff's signature[1] and by the signature of her counsel.

Further, "[a]n acceptance sufficient to create a contract arises where the individual to whom an offer is extended manifests an intent to be bound by the offer, and all legal consequences flowing from the offer, through voluntarily undertaking some unequivocal act sufficient for that purpose." *Kloian*, 273 Mich App at 453-454 (quotation marks, brackets, and citation omitted). Plaintiff's objective act of signing the facilitation agreement clearly manifested her intent to assent to the facilitation agreement. In the trial court, plaintiff contended

---

[1] MCR 2.507(G) is "in the nature of a statute of frauds." *Kloian*, 273 Mich App at 456. Signature by initials is sufficient to satisfy a statute of frauds. See *Archbold v Industrial Land Co*, 264 Mich 289, 291; 249 NW 858 (1933), citing 27 CJ, p 287; see also MCL 566.132. The initials here additionally were written on a signature line under which was printed plaintiff's full name.

that she believed the document was not final, and that while she indeed penned a signature, it was comprised of "fake initials" that did not represent her intent to be bound by the agreement. And plaintiff argues in her supplemental brief that there was no meeting of the minds. But again, the test for mutual assent is objective, not subjective. *Id*. at 454. Therefore, even if plaintiff did not subjectively believe that the agreement was final, her subjective belief cannot overcome her objectively clear and unequivocal act of signing the agreement. The agreement contained absolutely no indication that it was a draft, template, or otherwise not what it purported on its face to be—a memorandum of the terms of the parties' agreement.[2]

It is clear that plaintiff is dissatisfied with the amount of the settlement. But once a settlement is reached, "a party cannot disavow it merely because [s]he has had a change of heart." *Metro Life Ins Co v Goolsby*, 165 Mich App 126, 128; 418 NW2d 700 (1987) (quotation marks omitted). Nor can the agreement be avoided because a party made a bad bargain. *Berg v Hessey*, 268 Mich 599, 605; 256 NW 562 (1934).[3]

The majority of the remaining arguments raised by plaintiff on appeal are either moot (such as arguments related to an unspecified file that either plaintiff's or defendant's attorney allegedly failed to provide) or raise issues of public policy that are beyond the scope of this Court's authority, and we decline to address them. "Michigan courts exist to decide actual cases and controversies, and thus will not decide moot issues." See *Thomas M Cooley Law School v Doe 1*, 300 Mich App 245, 254; 833 NW2d 331 (2013). "It is not the role of the judiciary to second-guess the wisdom of a legislative policy choice; our constitutional role is to interpret—not rewrite—the law." See *State Farm Fire and Cas Co v Old Republic Ins Co*, 466 Mich 142, 149; 644 NW2d 715 (2002).

---

[2] Plaintiff also argues in her supplemental brief that the facilitation agreement lacked consideration, but admits she received an amount of money, however unsatisfactory she may have found it. Courts do not generally inquire into the adequacy of consideration; it has been stated that a cent or a peppercorn constitutes valuable consideration, legally speaking. See *Gen Motors Corp v Dep't of Treas*, 466 Mich 231, 238-239; 644 NW2d 734 (2002).

[3] In her supplemental brief, plaintiff also asserts "misrepresentation" as a basis for overturning the trial court's ruling, but does not elaborate sufficiently for this Court to state with confidence that it understands what misrepresentation plaintiff is alleging. Plaintiff may be referring to her contention that Canner misrepresented to her that the document upon which she placed her initials was not legally binding and was not the final form of the agreement, in which case we have addressed that contention in our opinion. If plaintiff refers to another incidence of misrepresentation, she has failed to support her argument factually or legally and has abandoned it. See *Nat'l Waterworks, Inc v Internat'l Fidelity & Surety, Ltd*, 275 Mich App 256, 265; 739 NW2d 121 2007 ("When a party merely announces a position and provides no authority to support it, we consider the issue waived.")

### III. JUDICIAL DISQUALIFICATION

We will, however, address plaintiff's argument that the trial judge's failure to sua sponte recuse herself from the case was error requiring reversal. We disagree.

Because plaintiff failed to file a motion to disqualify below, the issue is not preserved. *In re Contempt of Henry*, 282 Mich App 656, 679; 765 NW2d 44 (2009). Our review is therefore limited to plain error affecting substantial rights. *Demski v Petlick*, 309 Mich App 404, 426-427; 873 NW2d 596 (2015).

At an April 1, 2015 settlement conference, the judge presiding over this matter disclosed to counsel for the parties that her niece had recently graduated from law school and had accepted a position working in the same office as counsel for defendant. Plaintiff's counsel congratulated the judge on her niece's accomplishment. The judge explained that this fact did not influence her "one way or the other[,]" but nonetheless invited the parties to make any concerns known to the court. Plaintiff's counsel stated, "Okay." That was the end of the matter in the trial court; throughout the remaining proceedings, which went on for over a year, plaintiff never sought to disqualify the judge from the case.

We conclude that plaintiff has waived the issue. Waiver is the intentional relinquishment or abandonment of a known right. *The Cadle Co v City of Kentwood*, 285 Mich App 240, 254; 776 NW2d 145 (2009). But even if plaintiff has not waived the issue, she is not entitled to relief. "MCR 2.003(B)(1) provides that a judge is disqualified when the 'judge is personally biased or prejudiced for or against a party or attorney.' Generally, a trial judge is not disqualified absent a showing of actual bias or prejudice." *Contempt of Henry*, 282 Mich App at 679-680. Plaintiff has not demonstrated any actual bias or prejudice. The mere fact that a relative of a judge works for the same firm that represents a party to the action is not sufficient grounds, standing alone, to require recusal. See *Adair v State*, 474 Mich 1027, 1029; 709 NW2d 567 (2006) (opinion by TAYLOR, C.J., and MARKMAN, J.). Indeed, MCR 2.003(C)(1)(g) specifically addresses disqualification based on the conduct or involvement of a relative of a judge, and calls for disqualification if:

> (g) The judge or the judge's spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:
>
> (*i*) is a party to the proceeding, or an officer, director, or trustee of a party;
>
> (*ii*) is acting as a lawyer in the proceeding;
>
> (*iii*) is known by the judge to have a more than de minimis interest that could be substantially affected by the proceeding; or
>
> (*iv*) is to the judge's knowledge likely to be a material witness in the proceeding. [MCR 2.003(C)(1)(g).]

In this case, all that has been demonstrated is that the trial judge's niece was employed as a staff attorney in the same office as counsel for defendant. That fact, standing alone, did not require the trial judge to recuse herself. No plain error occurred. *Demski*, 309 Mich App at 426-427.

Affirmed.

/s/ Michael J. Riordan
/s/ Mark T. Boonstra
/s/ Michael F. Gadola